Curia per
Johnson, J.
The matters of law arising out of this case will be considered with reference to the following points, without regard to the order in which they are set down in the brief. They are
First. Whether a surety to a guardianship bond is liable for funds in the hands of the guardian at the time the bond was executed?
Second. Assuming that the estate of William Caldwell, the deceased guardian, is insufficient to pay all his debts, whether, in marshalling the assets, any balance that may be found due on the settlement of his accounts as guardian is to rank as a bond or simple contract debt?
Third. Whether, under the circumstances, the defendants are entitled to a credit on account of the subsistence of Charlotte and Elizabeth M’Dowell?
* Fourth. Whether the defendants are entitled to be credited on account of board and expenditures for clothing and tuition of James and Alexander M’Dowell, ascertained by a conjectural estimate, without proof of actual expenditure, and to an amount exceeding their annual income?
As to the first point, it was satisfactorily proved that William Caldwell, the guardian, in the interval between the order for his appointment and his entering into bond, received a sum of money from Harris & Bowen in part payment of a bond, and the decree allows it as a charge upon his estate, but not against the surety, because it came into his hands before the surety was bound; and these circumstances give rise to the first of the foregoing propositions.
The guardianship was general. It committed to William Caldwell the management of the whole estate of his wards, and his bond was intended as a security for the discharge of his duty with respect to the whole. Of this the funds in his hands constituted a part. His appointment was consummated by his entering into bond, for until then he had no powers. In virtue of it he had a right to detain the funds in his hands, and on every principle of justice and reason the bond must stand as a security for the manner in which he disposed of it. The sums received on this account must be charged to the surety, whether they were received before or after the execution of the bond.
Connected with this matter a contest has arisen, whether in point of fact the complainants were entitled to certain sums received by their guardian from John Collins and James Blocker, and on account of land sold to Drummond. The first of these only is allowed, and that only *369 as a charge upon the estate of William Caldwell and not against the surety. Whether William Caldwell received these sums as agent for the executors of *Patrick and Alexander M’Dowell, or on account of his wards, is left in some degree doubtful by the evidence; nor have I been able to between the character of the evidence in relation to these items, nor to comprehend fully the reasons which led to the allowance of one and the exclusion of the others; and under these circumstances it has been thought most advisable to send them to the commissioner for further evidence, with directions to charge them to the account of the guardianship bond, if they should be found to have been received on account of the plaintiffs; and it is ordered accordingly.
As to the second ground, by the common law, if the condition of a bond was broken, whether it was for the payment of money or for the performance of covenants, the penalty was forfeited and became a debt by specialty; and although equity has always relieved against it, and although by statutes courts of law are authorized to do so, yet I apprehend that the legal character of the debt has not been changed. The penalty still remains a debt by specialty, and stands as a security for whatever may be found due on the condition, and is entitled to rank as such in marshalling the estate of William Caldwell.
As to the third ground, the proof is very conclusive that there was no intention on the part of William Caldwell to charge his wards, Charlotte and Elizabeth M’Dowell, with board, and that it was so understood at the time they took up their residence with him. The relation of brother-in-law in which he stood to them, the well known liberality of his feelings, the kind attentions which he bestowed on them, added to the positive evidence of Mrs. Caldwell, establish it beyond controversy. Indeed the reasoning both of the chancellor and the commissioner indirectly admits it, a forced construction has evidently been resorted to for the purpose of *cbarging them with it as a relief to the surety, John Caldwell. But when we reason that it is unjust that a principal should be liberal at the expense of his surety, we see but one side of the picture of this case. These young ladies had been invited by Major Black and Mrs. Watts, their relations, whose respectability and ample means promised all that could be expected, to take up their residence with them, free of any expense on account of subsistence. They were seduced from this oiler by the entreaties of a sister, and the assurances of her husband that he would accord them the same terms. To charge them with board under these circumstances, would not only be a violation of the rule, that what was intended as a gratuity shall not be converted into a demand, but it would amount to a positive fraud. It has been further urged, that the invitation could not have contemplated a residence so protracted as this proved to be, and that for that reason it should be limited to one year. The undertaking was voluntary, and imposed no obligation on William Caldwell further than that it was executed; and if he found it onerous he might at any time have put an end to it, but until he did so the original conditions remained. This view of the subject is not, however, intended to exclude any demands for money expended for clothing, or other necessaries suited to their condition and circumstances in life; for these they are clearly accountable.
*370 With respect to the fourth proposition, the facts appear to be these : the complainant, Alexander M’Dowell, and his deceased brother, James M’Dowell, had been put out apprentices to trades; but on funds coming into the hands of their guardian, he removed them from their occupations, and put them to school. They resided with the guardian a part of the time, and at other times were boarded abroad, but no account has been furnished of the actual expenditures, or of the length of time they *were boarded abroad; and the bases of the them is probable conjecture as to what would be the expenses of board, tuition, clothing, &c., for the whole length of time. It is a well settled rule, that the guardian is not entitled to break in upon the capital of his ward for his subsistence, except under peculiar circumstances, which do not enter into this case; and generally it is limited within the income. Of course, there could not be a balance against the ward at the end of the year on which interest could be calculated ; and for this reason, as a general rule, interest is not allowable on a balance due for subsistence. The liberality of the complainants, in consenting that a reasonable allowance should be made for the board of those young men, without regard to their income, has relieved the court from the necessity of applying these principles to the case further than is applicable to interest on the annual expenditures. This, for the reasons before mentioned, cannot be admitted; and the account for their board and subsistence will be retained, expunging the interest which has been calculated on it.
With respect to the matters contained in the seventh ground of the complainants’ motion, it may be remarked that thay present a proposition too clear to admit of any doubt. If the expenses of the suit of Black and others and wife v. M. Junkin were incurred in prosecuting the rights of the complainants, and have been paid by their guardian, he is entitled to be credited with them; and so with regard to the expenses on account of the lands sold to Drummond. If the proceeds of this sale belonged to complainants, of course they are chargeable with the expenses, but if otherwise they clearly are not. Whether they are, or arc not entitled to this fond, is one of the facts referred back to the commissioner; -and their liability must depend on the determination of that question.
This disposes of all the points made on the part of *the complainants; and it will only be necessary to notice very briefly those made the defendant. The first stated in his brief is disposed of in considering the second general proposition arising out of the complainants’ motion, and without abandoning the question of law arising out of his second ground. Mr. John Caldwell, who is the party and the counsel, has consented to waive it, and that the amount charged to have been received from Mr. Cheves shall be retained. His third ground involves a question of fact onl_y, and for that reason this court would reluctantly interfere with it: but connected with it is the circumstance that no accounts have been kept or exhibited as to the actual expenditures; and if a person who stands in a fiduciary relation will suffer his transactions to be involved in obscurity, when, by a proper attention to his dut}: and the interest of his cestui que trust, he might have removed it, if he is entitled to any remuneration, it furnishes a good reason for putting it on the lowest estimate. The *371 court are perfectly satisfied with the deduction made by the chancellor on account of the board of the young men.
It is therefore ordered that this case be referred back to the commissioner, to examine into the matters left open by this decree, and to state an account between the parties conformably to the principles laid down.

Decree modified.